James A. RUSSELL, Plaintiff–Appellee,

v.

Thomas A. COUGHLIN, III, Commissioner, New York State Department of Correctional Services; James E. Sullivan, Superintendent, Sing Sing Correctional Facility; Carl Berry, Deputy Superintendent, Sing Sing; C. Artuz, Deputy Superintendent of Security, Sing Sing; Franklin P. Herber, Alfredo Dezayas, Sergeants; Jules Ross, Harry J. Kerrigan, William V. Graf, Corrections Officers, Defendants.

Appeal of Thomas A. COUGHLIN, III, Commissioner, New York State Department of Correctional Services; James E. Sullivan, Superintendent, Sing Sing Correctional Facility; C. Artuz, Deputy Superintendent of Security, Sing Sing; Franklin P. Herber, Alfredo Dezayas, Sergeants; Jules Ross, Harry J. Kerrigan, William V. Graf, Corrections Officers, Defendants–Appellants.

No. 512, Docket 89–2321.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1989.

Decided Aug. 2, 1990.

**76**

David D. Brown, IV, New York City (Michael F. Orman, Timothy J. White, of counsel), for plaintiff-appellee.

Lawrence S. Kahn, Deputy Sol. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Peter A. Durfee, Asst. Atty. Gen., New York City, of counsel), for defendants-appellants.

Before VAN GRAAFEILAND, PIERCE and MINER, Circuit Judges.

PIERCE, Senior Circuit Judge:

This is an interlocutory appeal from an order of the United States District Court for the Southern District of New York, Cedarbaum, Judge, denying defendants' motion for summary judgment. Appellee Russell brought suit for damages and other relief under 42 U.S.C. § 1983 against the Commissioner of the New York State Department of Correctional Services and various officials of the Sing Sing Correctional Facility (collectively "defendants"). Russell's complaint alleged that he had been wrongfully restricted to his cell for ten days without receiving notice of any charges against him and without receiving a hearing. The district court denied defendants' summary judgment motion seeking qualified immunity. For the reasons that follow, we affirm.

**I**

On March 20, 1985, Russell entered a dining area of Sing Sing and was assigned a seat by Corrections Officer William Graf. Russell refused to sit in the assigned seat and sat elsewhere. After Russell completed his meal, Graf led Russell to his cell and he was later placed on "keeplock" status by Sergeant Franklin Herber. As an inmate placed in keeplock, Russell was restricted to his cell with attendant loss of privileges.

Graf claims that on the same day he wrote a misbehavior report charging Russell with disobeying an order. Apparently, such reports usually were forwarded to the disciplinary office to be processed by the lieutenant on duty that evening. Ordinarily, after reviewing such a report the lieutenant could either continue the keeplock status pending a disciplinary hearing on the underlying charges or release the inmate from keeplock. Defendants allege that Russell's misbehavior report dated March 20, 1985, was misplaced and therefore the report was never processed. On March 30, 1985, when prison officials discovered that Russell had been confined to his cell for ten days without notice of a charge or a hearing on the misbehavior report, he was released from keeplock.

On his last day in keeplock, Russell commenced this action seeking damages, injunctive relief and declaratory relief for violations of his fifth, eighth and fourteenth amendment rights. On the eve of trial, defendants moved for summary judgment arguing that because Russell had no clearly established liberty interest in remaining out of keeplock they were protected by qualified immunity. Treating Russell's confinement as administrative for purposes of defendants' motion, Judge Cedarbaum denied the motion, concluding that Russell had a liberty interest in remaining out of keeplock. The district judge also concluded that the process to which Russell was entitled—"written notice and ... some opportunity to present his position"—had been clearly established prior to the events in question by decisions of the Supreme Court and this Circuit.

Proceeding under the collateral order doctrine, *see Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985), defendants appeal the denial of their motion for summary judgment.

## II

Before we need address defendants' claim of qualified immunity, two threshold issues presented are whether Russell possessed a liberty interest in remaining out of keeplock, and, if he did, whether he was deprived of this interest without due process of law. *See generally, Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) (first inquiry in § 1983 suit is whether plaintiff's federally protected rights have been violated).

### A. Liberty Interest

■ For purposes of this appeal, we assume, as did the district court, that Russell's confinement was administrative and not disciplinary in nature. Generally, restrictive confinement imposed for administrative reasons does not implicate a liberty interest unless the state, by enacting certain statutory or regulatory measures, creates a liberty interest in remaining in the general prison population. *Hewitt v. Helms,* 459 U.S. 460, 468–72, 103 S.Ct. 864, 869–72, 74 L.Ed.2d 675 (1983); *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984). To create a constitutionally protected liberty interest, a state regulation must employ "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed ... and that administrative segregation will not occur absent specified substantive predicates...." *Helms,* 459 U.S. at 471–72, 103 S.Ct. at 871; *see Kentucky Dep't of Corrections v. Thompson,* —— U.S. ——, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

■ Russell's keeplock confinement occurred pursuant to 7 N.Y. Comp.Codes R. & Regs. § 251–1.6(a) (1983) [hereinafter N.Y.C.R.R.]. Section 251–1.6(a) specifies the conditions under which an inmate may be placed in keeplock:

Where an officer has reasonable grounds to believe that an inmate should be confined to his cell or room or housing area because he represents an immediate threat to the safety, security or order of the facility or [an] immediate danger to other persons or to property, such officer shall take reasonable and appropriate steps to so confine the inmate.

Once an inmate is confined to keeplock, New York regulations require that prison authorities follow certain procedures. For example, 7 N.Y.C.R.R. § 251–5.1(a) mandates that a disciplinary hearing "must be commenced as soon as is reasonably practicable following the inmate's initial confinement ... but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee." *See also* 7 N.Y.C.R.R. § 251–1.6(e)(1) (employee who places an inmate in keeplock "shall" report this fact in writing to the superintendent before going off duty).

As we stated in *Gittens v. LeFevre,* 891 F.2d 38, 40 (2d Cir.1989), these regulations create "a liberty interest by using mandatory language and requiring specific substantive predicates for keeplock." For example, one substantive predicate upon which an inmate may be confined in keeplock is whenever an inmate represents a threat to the order of the facility. 7 N.Y.C.R.R. § 251–1.6(a). In addition, the regulations mandate that certain procedures—such as a hearing within seven days—must be followed once an inmate is placed in keeplock. Since, as we held in *Gittens,* New York State's regulations governing keeplock create a liberty interest in remaining free from administrative confinement, Russell was deprived of this interest when he was placed in keeplock.

### B. Due Process

■ We next consider what process Russell was entitled to receive. Under *Helms,* an inmate placed in administrative confinement is entitled to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476, 103 S.Ct. at 874. "This due process requirement may be satisfied by 'an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including what-

ever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation.'" *Gittens*, 891 F.2d at 41 (quoting *Helms*, 459 U.S. at 472, 103 S.Ct. at 871–72).

Defendants argue that Russell's release on his tenth day of confinement satisfied whatever procedural protections Russell was entitled to under *Helms*. Even if defendants' release of Russell could be treated as somehow mooting the requirements of notice and an opportunity to be heard, the question remains whether defendants' actions occurred within a "reasonable time." What is considered a "reasonable time" will depend upon the particular situation being examined. In *Helms*, for example, the Court found reasonable an initial delay of five days before review of an inmate's administrative confinement when the delay was necessary to conduct an investigation of misconduct charges. *Id.* at 477 & n. 9, 103 S.Ct. at 874 & n. 9; *see also Gittens*, 891 F.2d at 41 (finding seven-day delay unreasonable). In the present case defendants have offered no evidence of circumstances justifying their ten-day delay, and they acknowledge that the length of Russell's confinement was a result of their inadvertence. Under these circumstances, we conclude that defendants' release of Russell on his tenth day of confinement did not occur within a "reasonable time."[1]

In sum, since the deprivation of Russell's liberty did not occur pursuant to constitutionally adequate procedures provided within a reasonable time, he was denied due process.

### III

■ Defendants suggest that even if they did violate Russell's due process

rights, they are entitled to qualified immunity. State officials performing discretionary functions are shielded from liability for civil damages in § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even when such rights are clearly established, qualified immunity also protects a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987); *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

We first determine whether Russell's liberty interest in remaining out of keeplock was clearly established by March of 1985. For a right to be clearly established, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). In the context of this case, the issue presented is whether application of the Supreme Court's 1983 decision in *Helms* to New York's keeplock regulations compelled a conclusion that the regulations created a liberty interest.

Previously, we have recognized that it may not be apparent, merely from an analysis of state regulations under the *Helms* standard, whether the regulations create a liberty interest. For example in *Matiyn v. Henderson*, 841 F.2d 31, 34–36 (2d Cir.), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988), we ex-

---

**1.** Russell contends that New York's "seven-day" rule, 7 N.Y.C.R.R. § 251–5.1(a), provides the appropriate benchmark for determining what is a "reasonable time." Section 251–5.1(a) requires that normally a disciplinary hearing be commenced within seven days of an inmate's confinement to keeplock. Russell claims that he was entitled to a hearing within seven days as a matter of due process.

Federal constitutional standards rather than state law define the requirements of procedural due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487,

1492–93, 84 L.Ed.2d 494 (1985); *Robison*, 821 F.2d at 922–23. "[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action," *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262–63, 63 L.Ed.2d 552 (1980), does not settle what protection the federal due process clause requires. Here, defendants' conduct is to be judged against the flexible "reasonable time" standard set forth in *Helms*, and we are not bound to rely upon New York's seven-day rule as urged by Russell.

amined New York's regulations governing protective admissions and concluded that, under *Helms*, these regulations created a protected liberty interest. Nevertheless, we sustained a claim of qualified immunity on the ground that the prison officials could reasonably have believed that the language of the regulations governing protective admissions was not sufficiently mandatory to have created a liberty interest. *Id.* at 36. Our opinion also emphasized that at least one portion of the regulations was "not a model of clarity" and was reasonably subject to conflicting interpretations. *Id.*

Whatever ambiguities were present in the protective admission regulations at issue in *Matiyn* are not found in New York's keeplock regulations. By directing that an officer "shall ... confine the inmate" when he represents a threat to the safety, security, or order of a prison, and by requiring that a hearing "must" be commenced as soon as reasonably practicable but no later than seven days after an inmate's confinement to keeplock, New York State's regulations use "language of an unmistakably mandatory character" that place clear limits on the discretion of prison officials. *Helms*, 459 U.S. at 471, 103 S.Ct. at 871. Given the unequivocal directives of these regulations, it would have been unreasonable for defendants to believe that the state's keeplock regulations were not sufficiently mandatory to create a protected liberty interest. We therefore conclude that at the time of Russell's confinement it was clearly established that New York's keeplock regulations created a liberty interest in remaining out of administrative confinement. *See Gittens*, 891 F.2d at 42.

We next address whether defendants could reasonably have believed that releasing Russell on his tenth day of confinement complied with the requirements of federal due process. Again, assuming that Russell's release from keeplock can be treated as perhaps mooting the requirements of notice and an opportunity to be heard, the issue remains whether it was objectively reasonable for defendants to believe that their actions on the tenth day of Russell's confinement occurred within a "reasonable time." The *Helms* "reasonable time" standard admittedly does not fix a precise time period within which state officials must act. Accordingly, in *Gittens* we sustained a claim of qualified immunity on the ground that the government officials could have reasonably believed that New York's seven-day rule complied with the "reasonable time" standard. *Gittens*, 891 F.2d at 42–43. Defendants herein did not release Russell until his *tenth* day of confinement, and consequently the seven-day rule itself can provide no basis for qualified immunity in the instant case.

At oral argument defendants nonetheless contended that a reasonable corrections officer would not have known that a ten-day delay violated the "reasonable time" standard. Despite the inexactness of the "reasonable time" standard, defendants must be held to have recognized that this standard placed some obligation on them to act in a timely fashion. Absent some administrative consideration that might have justified a delay in providing Russell with notice and an opportunity to be heard, defendants could not have reasonably believed that their release of Russell on his tenth day in confinement complied with the "reasonable time" standard.

To summarize, we conclude that, prior to Russell's keeplock, it was clearly established that New York's keeplock regulations created a protected liberty interest. Further, defendants could not have reasonably believed that releasing Russell on his tenth day of confinement without providing any notice or opportunity to be heard complied with the requirements of federal due process. The district court properly rejected the defense of qualified immunity.

IV

For the foregoing reasons, the judgment of the district court is affirmed, and the case is remanded for further proceedings consistent with this opinion.