**Anthony GREEN, Plaintiff,**

v.

**Patrick BAUVI, Thomas A. Bushek, Clarence Colwell, William Fenton, Ted Nielsen, Ray Sanford, Amy Schnellbaecher, and Jacqueline Trepanier, Defendants.**

No. 88 Civ. 5329 (RPP).

United States District Court,
S.D. New York.

May 8, 1992.

Milbank, Tweed, Hadley & McCloy by
Eugene F. Farabaugh, Joseph S. Genova,

Gila Gellman, Dennis Doherty, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y. by Lisa Raphael, Barbara K. Hathaway, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action brought under 42 U.S.C. § 1983 for a declaratory judgment and damages alleging violations of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution. Defendants move jointly pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. PROCEDURAL HISTORY

In 1988, Plaintiff Anthony Green was an inmate at Green Haven Correctional Facility ("Green Haven") in Stormville, New York. Defendants, who are all being sued in their official and individual capacities, were at all relevant times employed at Green Haven: Patrick Bauvi, Ted Nielsen, and Jacqueline Trepanier as Corrections Officers; Clarence Colwell, William Fenton, and Ray Sanford as Lieutenants; Thomas A. Bushek as a Deputy Superintendent; and Amy Schnellbaecher as a physical therapist assistant.

Plaintiff filed his original pro se complaint in this action on August 1, 1988, alleging constitutional violations arising from events that took place in March, 1988. That complaint sought damages from Colwell, Fenton, Bauvi, and Trepanier and also named as defendants Charles J. Scully, Charles R. Winch, and Robert Seitz. In an Amended Complaint filed on December 29, 1988, Plaintiff added two new claims against the original defendants and named as additional defendants Bushek, Nielsen, Sanford, and Schnellbaecher. The new

claims related to events that took place in September, 1988 and October, 1988.

By Opinion and Order of June 27, 1989, this Court dismissed the claims against Scully and Seitz in the original complaint and the claims against Scully, Seitz, Winch, and Fenton in the Amended Complaint. The Court did not pass on the merits of the claims against Bushek, Nielsen, Sanford, and Schnellbaecher because Plaintiff had failed to serve them with the Amended Complaint. *Green v. Scully,* No 88 Civ. 5329, 1989 WL 74429 1989 U.S. Dist. LEXIS 7141 (S.D.N.Y. June 27, 1989).

Represented by pro bono counsel, Plaintiff filed a Second Amended Complaint on November 15, 1991. Defendant's joint motion to dismiss that complaint is the subject of this opinion.

### II. PLAINTIFF'S ALLEGATIONS

The Second Amended Complaint alleges the following.

#### A. *Events of March, 1988*

On March 7, 1988, Trepanier issued a misbehavior report ("MR–1") charging that on March 6, 1988:

> Inmate Green was standing in the corridor talking to another inmate. When he finished talking, he stepped inside D-block door and handed me these papers and said, "these are the papers I said I would give you." He rapidly disappeared down the corridor before I could refuse the papers or say anything at all. This is not the first time I have been approached by this inmate. He past me, while walking with his company and made gestures with his lips to say, "I love you." I feel inmate Green may be obsessed with me. I did not do anything to warrant this type of behavior from inmate Green.

Second Amended Complaint, Exh. A. In MR–1, Trepanier charged Green with violating the following rules set forth in N.Y.Comp.Codes R. & Regs. tit. 7 ("7 NYCRR"), § 270.1: Rule 107.10 (Inmates shall not physically or verbally obstruct or interfere with an employee at any time), Rule 107.11 (Inmates shall not verbally ha-

rass employees), and Rule 109.10 (Inmates shall not be out of place in any area of the facility). Green was served with a copy of MR–1 on March 7, 1988 and was placed in keeplock confinement[1] on March 9, 1988.

On March 14, 1988, Bauvi, authorized by Fenton, issued a recommendation that Green be placed in Involuntary Protective Custody ("IPC").[2] In the IPC recommendation, Fenton stated:

> From information received it appears that you developed an infatuation for a member of this facility. On one occasion, you had passed C.O. Trepanier in the hallway while you were walking with your company. You made motions with your lips and muttered the words "I LOVE YOU". On March 6, 1988 you approached C.O. Trepanier and gave her some papers. The Administration of this facility strongly believes your apparent infatuation with this Officer could lead to a dangerous situation there for, for the safety of the staff member the administration feels you should be separated from this officer.

Second Amended Complaint, Exh. B. Based on this recommendation, Green was transferred to a Special Housing Unit ("SHU").[3]

On March 17, 1988, Green was summoned for a Tier III hearing[4] before Colwell, as hearing officer, regarding the rule violations alleged in MR–1. Because the hearing was not commenced within seven days of Green's confinement in keeplock, and because no extension of time was approved by the Commissioner of Correctional Services, Colwell dismissed the charges as untimely under 7 NYCRR § 251–5.1(a).[5]

Despite the dismissal of the charges in MR–1, the next day Colwell reinstated the same allegations for a hearing based on Bauvi's IPC recommendation. At the IPC hearing, Green denied handing any papers to Trepanier and questioned how Trepanier could have picked him out of a group of 60 inmates and read his lips as saying "I love you." The hearing resumed on March 18, 1988, and two witnesses testified for Green. The hearing was adjourned until March 22, 1988, at which time Green denied

1. "Keeplock is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989). *See also* 7 NYCRR § 251–1.6.

2. 7 NYCRR § 330.2(b) provides that IPC is appropriate for, "An inmate who may be a potential victim or a witness likely to be intimidated, or who lacks the ability to live in the general facility community and who may for good cause be restricted from communication with the general inmate population, and who does not voluntarily accept admission into protective custody status."

3. "Prisoners are confined to SHU's while awaiting disciplinary hearings for violations of prison rules and while serving time in segregation as punishment for such violations. SHU's are also used to house prisoners for mental observation and for voluntary and involuntary protective custody. The SHU's are self-contained prisons-within-a-prison, consisting of individual cells, guard control areas, a kitchen, and an outdoor exercise area. * * * Prisoners are usually confined to their cells for approximately 23 hours per day, leaving only one hour of exercise, showers, cell cleaning, medical attention, and visits." *Anderson v. Coughlin,* 757 F.2d 33, 34 (2d Cir.1985).

4. 7 NYCRR § 270.3 provides for three separate "tiers" of disciplinary hearings for the purpose of determining allegations of rule violations contained in misbehavior reports:

> (1) Tier I—violation hearing
> (2) Tier II—disciplinary hearing
> (3) Tier III—superintendent's hearing

Plaintiff alleges that of these three tiers, Tier III hearings allow for the most severe punishment but require the most extensive procedural safeguards. Second Amended Complaint, ¶ 4 n. 2.

5. Section 251–5.1 provides in part:

> (a) Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.
> (b) The hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.

all charges and objected to facing the same charges which had been dismissed as time-barred on March 17, 1988. Bauvi was not called to appear on March 22, 1988. After the IPC hearing concluded, Colwell completed a written "IPC Hearing Determination" in which he concluded:

Based on this incident and your prior disciplinary record where you were charged with making threats in a letter to persons on jury during your trial and on 2/8/87 with writing threats to 3 nurses at Auburn CF, it is this hearing officer belief that you need to be isolated from having the freedom of free movement that you would have as a general population inmate.

Second Amended Complaint, Exh. C. Accordingly, Colwell determined, "that you are a threat to the staff of this facility, and that you are to remain in IPC until you receive a clearance from the Mental Hyg[iene] unit, that you are not a threat." *Id.*

Green appealed Colwell's determination. On March 31, 1988, First Deputy Superintendent Charles Winch concluded, "After a review of your Tier III hearing of 3/22/88 I have found no evidence to hold you in IPC, therefore, the hearing is dismissed and you are released this date—3/31/88." Second Amended Complaint, Exh. D.

### B. *Events of September and October, 1988*

On September 15, 1988, Nielsen issued a misbehavior report ("MR–2"), charging that on September 15, 1988:

Green grabbed Physical Therapy Assistant Amy Schnellbaecher's hand and said, "I love long fingernails, I'd love to have you rake these up and down my back." Inmate Green had previously made personal remarks about Ms. Schnellbaecher in her presence. To include, how tight her pants are and how much he loves her fingernails.

Second Amended Complaint, Exh. H. Plaintiff alleges that MR–2 charged three separate rule violations. However, an examination of MR–2, which is appended to Plaintiff's complaint, indicates that Green was charged only with the violation of Rule 101.10. That rule provides, "Inmates shall not engage in, encourage, solicit, or attempt to force others to engage in sexual acts."

At approximately 3:05 p.m. on September 16, 1988, Green received a copy of MR–2 and was placed in keeplock. Green charges that MR–2 violated 7 NYCRR § 251–1.4(b) because Nielsen issued the report without personal knowledge of the facts, and MR–2 was not signed or endorsed by Schnellbaecher.

On September 21, 1988, Nielsen, authorized by Bushek, issued another misbehavior report ("MR–3"), based on a letter which Green sent to Schnellbaecher.[6] MR–3 charged Green with violations of Rule 107.11, *supra,* and Rule 102.10, which provides, "Inmates shall not make threats of any kind." Thereafter, Green was served with a copy of MR–3 and transferred from keeplock to an SHU. On September 23, 1988, Bushek commenced a Tier III hearing with regard to MR–2, and Sanford commenced a Tier III hearing with regard to MR–3.

At the MR–2 hearing before Bushek, Bushek failed to explain why the hearing was not commenced until eight days after Plaintiff's initial keeplock confinement and did not produce written authorization for the delay. The hearing continued on September 30, 1988, 15 days after Plaintiff's initial keeplock confinement, at which time: Bushek refused to show Plaintiff an authorization for the delay in completing the hearing; Bushek refused to permit Green to call any of his witnesses to testify on his behalf; Bushek did not indicate to Green that Green's witnesses were not present at Green Haven before making his final determination and did not show any proof that he had tried to locate those witnesses; and the employee assistant selected by Green never appeared, failed to provide reports of

---

**6.** According the Plaintiff's counsel, the letter "suggest[ed] that plaintiff was contemplating bringing a Section 1983 action against Schnell-baecher." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.Mem.") at 11.

any investigations, did not make any effort to interview Green's witnesses or otherwise to assist Green while Green was confined in keeplock. At the conclusion of the MR–2 hearing on September 30, 1988, Bushek found Green guilty and imposed a penalty of 90 days in keeplock and an additional 90 days deferred.

At the MR–3 hearing before Sanford on September 23, 1988: Sanford failed to explain why the hearing was not commenced until eight days after Green's confinement in keeplock and failed to produce written authorization for the delay; and Green admitted sending a letter to Schnellbaecher, but denied the alleged rule violations, and requested that he be given employee assistance as is allegedly required by 7 NYCRR § 251–4.1(a). The hearing was adjourned so that Green could assemble witnesses.

When the MR–3 hearing continued on October 3, 1988, Green complained that no employee assistant ever came to see him, but Sanford purportedly "waived" Green's rights to employee assistance and proceeded with the hearing. Because Green had no employee assistance, no witnesses on his behalf, and because no investigation of the charges had been conducted, on October 3, 1988 Green changed his plea from not guilty to guilty. Sanford found Green guilty as charged and imposed sanctions of 90 days confinement in his cell and loss of access to the commissary, to packages, and to the new visiting room.

Green appealed Sanford's finding and sanctions. On October 3, 1988, the same day the MR–3 hearing concluded, First Deputy Winch found, "I have reviewed your Tier III hearing held on 10/3/88 in accordance with your appeal and do not find substantial evidence to affirm the charges, therefore I am dismissing the hearing." Second Amended Complaint, Exh. I. Green, however, remained in keeplock on the MR–2 charge until December

15, 1988 when the 90 day sentence imposed by Bushek expired.

## III. PLAINTIFF'S CLAIMS

Plaintiff alleges the following 12 causes of action.

1. By subjecting Plaintiff to the March 22, 1989 Tier III hearing based on the same charges dismissed on March 17, 1988 pursuant to 7 NYCRR § 251–5.1(a, b), Colwell deprived Plaintiff of his rights to procedural due process and equal protection of law [7] guaranteed by the Fourteenth Amendment to the United States Constitution.

2. Confining Plaintiff in IPC based solely on a recommendation authorized by Fenton and written by Bauvi, who had not issued the original misbehavior report as required by 7 NYCRR § 251–1.4(b), constituted a gross deprivation of Plaintiff's civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

3. By failing to commence the March Tier III hearing within seven days after Plaintiff's initial confinement in keeplock, and by failing to seek authorization for the delay, Colwell violated 7 NYCRR § 251–5.1(a), thereby violating Plaintiff's civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

4. By not completing the March Tier III hearing within 14 days following the writing of the misbehavior report and by failing to seek authorization for the delay as required by 7 NYCRR § 251–5.1(b), Colwell deprived Plaintiff of his civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

5. By failing to commence the September Tier III hearings within seven days after Plaintiff's initial confinement in keeplock

---

7. Defendants' Memorandum in Support of the Motion to Dismiss ("Def.Mem.") stated, "Eleven of the plaintiff's twelve causes of action charge the defendants with violating the equal protection clause, but an analysis of the claims reveals that the legal claims are for due process violations only. Accordingly, the equal protection claims will not be addressed further." Def. Mem. at 1, n. 1. Plaintiff has not responded to or otherwise rebutted this assertion. Accordingly, Plaintiff's equal protection claims are dismissed.

and by failing to seek authorization for the delay, Sanford violated 7 NYCRR § 251–5.1(a), thereby violating Plaintiff's civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

6. By failing to complete the September hearings within 14 days after the issuance of the misbehavior report and by failing to seek authorization for the delay, Sanford violated 7 NYCRR § 251–5.1(b), thereby violating Plaintiff's civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

7. By failing to commence the Tier III hearing until September 23, 1988, over 7 days after Plaintiff was placed in keeplock, and by failing to seek authorization for the delay, Bushek violated 7 NYCRR § 251–5.1(a), thereby violating Plaintiff's civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

8. By subjecting Plaintiff to Tier III hearings on September 23, 1988 and October 3, 1988, without the aid of an employee assistant as required by 7 NYCRR § 251–4.2, Sanford violated Plaintiff's rights to due process and equal protection as guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

9. Subjecting Plaintiff to a Tier III hearing based on a misbehavior report which was prepared by Nielsen without firsthand knowledge based on hearsay from Schnellbaecher in violation of 7 NYCRR § 251–1.4(b), deprived Plaintiff of his civil rights guaranteed by the due process clause and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

10. By subjecting Plaintiff to sanctions imposed in Tier III hearings based upon knowing and intentional procedural errors and a lack of substantial evidence, Bushek, Colwell, and Sanford deprived Plaintiff of his civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

11. Placing Plaintiff in keeplock from March 7 to March 14, in IPC from March 14 to March 31, and in keeplock from September 16 to December 16, 1988, as sanctions imposed at the several Tier III hearings, deprived Plaintiff of the following rights guaranteed by the December 14, 1983 Consent Decree entered in *Honeycutt v. Coughlin*, 80 Civ. 2530 (JMC),[8] and civil rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution: (a) denial of the right to attend religious services, (b) denial of the right to attend or participate in educational or vocational programs provided for the general population, (c) denial of the right not to be restricted to his cell for approximately 23 hours per day, (d) restriction of quantities of food while the general population received unlimited quantities of food, (e) denial of access to television or videos provided as recreation to the general population and preclusion from participation in all other programs available to the general population, (f) denial of access to the commissary, (g) denial of access to the new visiting room used by the general population even though the incidents involving Schnellbaecher were not related to the security of the new visiting room, (h) denial of package delivery as provided to the general population.

12. By placing Plaintiff in keeplock without justification for 23 days in March, 1988 and from September 16, 1988 to December 16, 1988, the acts of each Defendant deprived Plaintiff of his Eighth Amendment rights against cruel and unusual punishment in that Plaintiff: (a) was subjected to mental and physical anguish by being locked in a cell 23 hours a day without exercise, recreation, or religious counseling; and (b) was denied nutritionally adequate food, reading material, and showering opportunities.

8. *See* Second Amended Complaint, Exh. E.

Based on the 12 causes of action enumerated above, Plaintiff seeks the following relief:

(1) a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, that Defendants jointly and severally subjected Plaintiff to cruel and unusual punishment and violated Plaintiff's rights to procedural due process and equal protection of law, pursuant to 7 NYCRR § 250 through § 330.6 and the United States Constitution;

(2) an order expunging all institutional, parole, warden's card(s), service unit, family reunion, program committee, and disciplinary records and files which refer to the incidents of March 7, 17, 18, and 22, September 15, 16, 21, 23, and 30, and October 3, 1988, or the Tier III and/or IPC hearings;

(3) an award to Plaintiff of $1,000 per day, for each day spent in keeplock from March 7 to 31, 1988, from Bauvi, Colwell, Fenton, and Trepanier, and $1,000 per day for each day spent in keeplock from September 16 to December 16, 1988, from Bushek, Nielsen, Sanford, and Schnellbaecher;

(4) compensatory damages, in the amount of $150,000, from each of the Defendants;

(5) punitive damages, in the amount of $150,000, from each of the Defendants;

(6) Plaintiff's costs, attorneys' fees, and disbursements as a direct result of this action pursuant to 42 U.S.C. § 1988; and

(7) other and further relief as this Court shall deem just, proper, and equitable.

For the reasons set forth below, Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part.

## DISCUSSION

■ "A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe those allegations in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The Court has excluded all matters outside the pleadings and therefore does not convert this motion into one for summary judgment. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988) (in passing on a Rule 12(b)(6) motion, the district court may exclude extra-pleading material or convert the motion to one for summary judgment and give the parties an opportunity to present supporting material).

Plaintiff brings this action under 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff alleges, and Defendants do not contest, that the Defendants were "persons" who acted under color of state law. Second Amended Complaint ¶ 22. Defendants argue, however, that they did not subject or cause Plaintiff to be subjected to deprivations of rights, privileges, or immunities secured by the Constitution or laws of the United States.[9]

## I. THE ISSUANCE OF THE MISBEHAVIOR REPORTS

Defendants argue that because "Plaintiff's only claims against defendants Trepa-

---

**9.** Defendants' Notice of Motion indicates that they move for an order "dismissing the complaint." Defendants do not, however, address any argument to Plaintiff's first cause of action. Therefore, the motion to dismiss that claim is denied.

nier, Nielsen, and Schnellbaecher stem from their roles in causing misbehavior reports to be issued against plaintiff," Plaintiff fails as a matter of law to state a claim under § 1983. Def.Mem. at 8.

### A. *Trepanier*

■ As regards Trepanier, the Second Amended Complaint alleges only that she issued and signed MR–1 based on the events outlined therein.[10] The complaint does not allege that Trepanier's issuance of MR–1 was unlawful or in violation of prison rules or regulations. Accordingly, Plaintiff fails to state a claim against Trepanier stemming from her role in causing MR–1 to be issued against him.[11]

### B. *Schnellbaecher and Nielsen*

Plaintiff charges that MR–2 was issued a violation of 7 NYCRR § 251–1.4(b) because Nielsen wrote MR–2 without personal knowledge of the facts, and Schnellbaecher did not sign or endorse MR–2. Second Amended Complaint ¶ 12. Plaintiff alleges that "Subjecting Plaintiff to a Tier III hearing based on [a misbehavior report] prepared by Nielsen without firsthand knowledge based on hearsay from Schnellbaecher, in violation of 7 NYCRR § 251–1.4(b)," deprived Plaintiff of rights guaranteed by the due process and equal protection clauses. Second Amended Complaint ¶ 41.

■ Nielsen's writing of MR–2 "without personal knowledge of the facts" or "based on hearsay from Schnellbaecher" fails as a matter of law to allege a violation of

§ 251–1.4(b). That section provides that misbehavior reports:

> shall be made in writing by the employee who has observed the incident *or who has ascertained the facts*, and where more than one employee has personal knowledge of the facts, a report shall be made by each employee or, where appropriate, each such employee shall endorse his name on a report made by one employee (emphasis added).

By allowing such reports to be made by a person "who has ascertained the facts," § 251–1.4(b) specifically permitted MR–2 to be written by Nielsen on the basis of hearsay evidence without personal knowledge of the facts alleged therein. Accordingly, the claim against Nielsen based on his writing of MR–2 is deficient as a matter of law.

■ Plaintiff's claim against Schnellbaecher is similarly invalid because Schnellbaecher was prohibited from writing misbehavior reports by the consent decree entered in *Milburn v. Coughlin*, 79 Civ. 5077 (RJW), a class action involving medical care at Green Haven.[12] The *Milburn* consent decree provides *inter alia*, "In any case where disciplinary action is taken against an inmate for an interaction with a health care provider, the disciplinary report shall be written by security staff and not by the health care provider." Def.Mem., Appendix at 19. As a physical therapist assistant, Schnellbaecher was therefore prohibited from writing misbehavior reports, and her failure to sign or endorse MR–2 was entirely proper.[13]

---

**10.** Plaintiff's eleventh and twelfth causes of action, which relate to the conditions of his confinement in keeplock and IPC, are alleged against all of the defendants, including Trepanier. The Court addresses those claims *infra*.

**11.** The Court will not consider the allegations against Trepanier contained in Plaintiff's papers submitted in connection with this motion. *See Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F.Supp. 976, 987 n. 5 (S.D.N.Y.1989) (holding that a "claim for relief may not be amended by the briefs in opposition to a motion to dismiss."). *Accord Telectronics Proprietary Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y.1988).

**12.** The Court takes judicial notice of the *Milburn* consent decree. *See Deshmukh v. Cook*, 630 F.Supp. 956, 960 (S.D.N.Y.1986).

**13.** In his papers submitted in connection with this motion, Green charges, "By causing the issuance of and issuing [MR–3] against plaintiff based solely upon this letter mentioning potential litigation, Nielsen and Schnellbaecher infringed upon plaintiff's substantive due process right 'to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments.'" Pl.Mem. at 11. There is, however, no mention of a first amendment violation anywhere in Plaintiff's complaint. As noted *supra*, Plaintiff may not amend his complaint in his brief in opposition to a motion to dismiss.

## II. THE ISSUANCE AND AUTHORIZATION OF THE IPC RECOMMENDATION

In his second cause of action, Plaintiff alleges, "Confining plaintiff in IPC based solely on a recommendation, authorized by Fenton and written by Bauvi, who had not issued the original MR [MR–1] as required by 7 NYCRR § 251–1.4(b), constituted a gross deprivation of plaintiff's civil rights guaranteed by the due process and equal protection clauses." [14] Second Amended Complaint ¶ 27. Defendants argue that Plaintiff fails to state a § 1983 claim against Fenton and Bauvi based solely on their roles in issuing and authorizing the IPC recommendation.

■ By its terms, § 251–1.4(b) applies to misbehavior reports, not to IPC recommendations. Plaintiff argues, however, that because 7 NYCRR § 330.3(b) requires IPC hearings to be conducted in accordance with the regulations governing Tier III hearings,[15] regulations governing the writing of misbehavior reports must also apply to the issuance of IPC recommendations. Plaintiff cites no statute, regulation, or case law in support of this argument.

The Court recognizes, however, that IPC can be used to discipline an inmate, and, depending on the circumstances of the incident reported, that an IPC recommendation can be based on a misbehavior report. What is of constitutional importance, however, is the manner in which the IPC hearing is conducted, i.e. that the inmate be given notice of the charges and an opportunity to prepare for and to conduct a defense of the allegations against him.[16]

Plaintiff makes no claim that he was deprived of any such rights by Bauvi or Fenton. Accordingly, Plaintiff's claim against Bauvi and Fenton based on their issuance and approval of the IPC recommendation is deficient as a matter of law.

## III. PROCEDURAL SAFEGUARDS AT THE HEARINGS

### A. *Employee Assistance*

Plaintiff complains that Bushek and Sanford's failure to provide him with effective employee assistance at his September, 1988 and October, 1988 Tier III hearings violated his constitutional rights to due process and equal protection. Second Amended Complaint ¶¶ 16, 18, 39, 43. Defendants assert the defense of qualified immunity.

■ Qualified immunity shields state officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Second Circuit has observed that in a § 1983 action, "purely as a matter of law the defense [of qualified immunity] should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution." *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987).

■ Plaintiff argues that Defendants are not entitled to qualified immunity because "at the time of the hearings, any

**14.** As noted *supra*, § 251–1.4(b) requires that an MR "shall be made in writing by the employee who has observed the incident or who has ascertained the facts."

**15.** § 330.3(b) provides, "An inmate in [involuntary protective custody] shall have a hearing, conducted within 14 days in accordance with the provisions of Part 254 of this Title, to determine the need for protective custody admission." Part 254 sets forth procedures to be followed in superintendent's or Tier III hearings.

**16.** *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986) (holding that inmates "have no

constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but rather "a right not to be deprived of a protected liberty interest without due process of law"), *cert. denied* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). *Cf. Franco v. Kelly*, 854 F.2d 584, 586 (2d Cir.1988) (inmate stated a claim for a violation of his right to substantive due process by alleging that prison officials had engaged in a pattern of filing false disciplinary reports in retaliation for the inmate's cooperation with an Inspector General's investigation into the beating of another prisoner).

reasonable hearing officer would know that plaintiff's right to employee assistance had been guaranteed by New York law for five years." [17] Pl.Mem. at 26. Whether a right is established under state law, however, is irrelevant. The court's inquiry must focus on whether the right was clearly established under the Constitution or federal law at the time of the complained of act. *Robison*, 821 F.2d at 920.

■ With regard to when a right is "clearly established," the Second Circuit has noted:

> Several guidelines have emerged from case law to clarify a court's inquiry into when a right is clearly established. First, the particular right under consideration must be defined with reasonable specificity. Next, the court must determine whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right in question. The ultimate inquiry is whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent.

*Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). *See also Weber v. Dell*, 804 F.2d 796, 803 (2d Cir.1986) (requiring an appropriately direct prior holding by federal courts as a prerequisite to finding "clearly established" rights), *cert. denied* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Because at the time of Green's hearings neither the decisional law of the Supreme Court nor of the Second Circuit had clearly established the right of inmates held in IPC to employee assistance, Defendants are qualifiedly immune from suit.

In *Eng v. Coughlin*, 858 F.2d 889 (2d Cir.1988), a prisoner brought a § 1983 claim alleging that a prison employee's failure to provide him with effective employee assistance while he was held in IPC constituted a due process violation. The Second

Circuit affirmed the district court's ruling that the employee was entitled to qualified immunity "because no construction of the alleged facts could demonstrate that in 1983 [the employee] violated [the Plaintiff's] established constitutional right to assistance." 858 F.2d at 897. However, the court went on to note that "Confinement in SHU is a factor which, like illiteracy or complexity of charges, makes it nearly impossible for an inmate to formulate a defense, collect statements, interview witnesses, compile documentary evidence, and otherwise prepare for a disciplinary hearing." Accordingly, as to "Future Cases," the court ruled that "for inmates disabled by confinement in SHU, or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment." 858 F.2d at 897–898.

Importantly, however, *Eng* was not decided until October 4, 1988, the day *after* Plaintiff's final hearing on MR–3 concluded. Plaintiff has not cited any Supreme Court or Second Circuit case decided prior to *Eng* which established the right of inmates held in IPC to employee assistance. Accordingly, because that right was not clearly established until after Plaintiff's hearings concluded, Defendants are qualifiedly immune from suit for their alleged failure to provide Plaintiff with employee assistance.

### B. *Timeliness*

■ Plaintiff alleges that his due process rights were violated because his Tier III hearings were not commenced and completed in accordance with the time limits set forth in 7 NYCRR § 251–5.1. As noted *supra*, that section requires that when an inmate is confined pending a disciplinary hearing, the hearing must commence within seven days of his initial con-

---

**17.** The regulation governing employee assistance, 7 NYCRR § 251–4.1(a), provides:
An inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if:
(1) the inmate is either illiterate or non-English speaking; or

(2) the inmate is locked (keeplocked or confined to a special housing unit) and unable to prepare his defense.
Section 251–4.1(a) has been in effect since June 15, 1983.

finement and conclude within 14 days of the writing of the misbehavior report. The Commissioner of Correctional Services or his designee must authorize any delay beyond those time limits. Defendants argue (1) that Plaintiff has not alleged the violation of a federally protected interest, and (2) in the alternative, that they are entitled to the defense of qualified immunity.

### i. Federally Protected Interest

■ State prison officials have "broad administrative and discretionary authority" to remove an inmate from the general prison population for the purpose of ensuring safety and security of the prison, or pending investigation into an alleged disciplinary violation. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Such confinement is generally considered administrative and is not restricted by the Fourteenth Amendment. However, when state law limits the imposition of an administrative confinement such as keeplock, by using mandatory language and requiring specific substantive predicates, a liberty interest is created which may not be deprived without due process. *Id.* at 469–72, 103 S.Ct. at 870–72.

■ In *Gittens*, 891 F.2d at 40, the Second Circuit ruled in 1989 that New York law has created such a liberty interest by using mandatory language and requiring specific substantive predicates for keeplock. Having created such a liberty interest, New York State "must provide a minimum of due process commensurate with the government function involved and the private interest affected." *Accord Helms*, 459 U.S. at 476, 103 S.Ct. at 873–74. The *Gittens* court ruled that "This due process requirement may be satisfied by 'an informal, nonadversary review of the informa-

tion supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wish[es] to submit, within a reasonable time after confining him to administrative segregation.'" 891 F.2d at 41 (quoting *Helms*, 459 U.S. at 472, 103 S.Ct. at 871). What constitutes a reasonable time will depend upon the particular situation being examined.[18] *Russell v. Coughlin*, 910 F.2d 75, 78 (2d. Cir.1990).

The Second Circuit has similarly held that in the absence of evidence of circumstances justifying a delay, holding an inmate in keeplock for as few as five days prior to his disciplinary hearing may constitute a due process violation. *See Santana v. Keane*, 949 F.2d 584 (2d Cir.1991), (because record shed no light on reasons for the delay, hearing which began five days after the prisoner's initial confinement in keeplock and concluded four days later could constitute a due process violation); *Russell*, 910 F.2d at 78 (where no evidence offered to justify delay, confinement of prisoner for 10 days without holding a hearing did not satisfy "reasonable time" standard and constituted a denial of prisoner's due process rights). *See also Matiyn v. Henderson*, 841 F.2d 31, 36–37 (2d Cir.) (if inmate was held in IPC for four days without notice of the reasons for his confinement or an opportunity to be heard, "he was deprived of his rights under the Fourteenth Amendment"), *cert. denied* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988).

The Second Amended Complaint alleges:

1. that MR–1 was written on March 7, 1988; that Green was confined in keeplock on March 9, 1988; that the MR–1 hearing commenced eight days later on March 17, 1988; and that the hearing

---

18. *Gittens*, 891 F.2d at 41, held:
New York regulations governing keeplock do not meet the minimal due process standards established in *Helms*, because there is no provision for an inmate in keeplock to make any statement to the officer in charge of his confinement. * * * The sole opportunity to be heard on an inmate's administrative confinement is at a disciplinary hearing, where the ultimate issue of guilt or innocence will be determined. The

result, as evidence by this case, is that inmates may be held in keeplock only to find, after seven days, that their confinement was not justified.
As discussed *infra*, however, the *Gittens* court found that prison officials were entitled to the defense of qualified immunity because it was reasonable for them to have believed that compliance with the applicable regulations satisfied the requirements of due process. *Id.* at 42–3.

concluded on March 22, 1988, 15 days after MR–1 was written;

2. that MR–2 was written on September 15, 1988; that Green was confined in keeplock on September 16, 1988; that the MR–2 hearing commenced seven days later on September 23, 1988; and that the hearing concluded on September 30, 1988, 15 days after MR–2 was written; and

3. that MR–3 was written on September 21, 1988, while Green was confined in keeplock; that the MR–3 hearing commenced two days later on September 23, 1988; and that the hearing concluded on October 3, 1988, 12 days after MR–3 was written.

In the absence of any explanation for the delays in the commencement and conclusion of these hearings, this Court is "unable to conclude as a matter of law that due process was satisfied." *Santana,* 949 F.2d at 585.

ii. Defense of Qualified Immunity

Defendants assert that "any rights [Green] may have concerning the timeliness of his hearings were not clearly established at the time, and defendants are qualifiedly immune." Def.Mem. 19–20. Relying on *Gittens* and *Russell,* Plaintiff argues that such rights were clearly established at the time of Plaintiff's hearings in 1988. Plaintiff's Supplemental Memorandum of Law at 8.

 *Gittens,* a 1989 case decided after the events complained of here, addressed events which occurred in May, 1986. The court sustained the defendant's claim of qualified immunity with regard to a seven day delay in holding a hearing on the ground that the prison officials could have reasonably believed that New York's seven-day rule complied with the "reasonable time" standard of *Helms.* 891 F.2d at 42–43. In *Russell,* a 1990 case addressing events which occurred in March, 1985, the court ruled that because the plaintiff had been held in confinement for 10 days without a hearing, the defendant's compliance with New York's seven-day rule was not a basis for asserting qualified immunity. Accordingly, the court held:

Despite the inexactness of the "reasonable time" standard, defendants must be held to have recognized that this standard placed some obligation on them to act in a timely fashion. Absent some administrative consideration that might have justified a delay in providing Russell with notice and an opportunity to be heard, defendants could not have reasonably believed that their release of Russell on his tenth day of confinement complied with the "reasonable time" standard.

910 F.2d at 79. Therefore, it was reasonable in 1988 for Defendants to believe that compliance with the time limits set forth in § 251–5.1(a) satisfied the "reasonable time" standard of *Helms. See Gittens,* 891 F.2d at 43. With regard to prison employees who failed to comply with the requirements of § 251–5.1 in 1988, however, the defense of qualified immunity cannot be sustained, absent some proof or justification for the delay. *Russell,* 910 F.2d at 43.

Colwell is alleged to have failed to commence and complete the March hearing within the time limits of § 251–5.1. Thus, he is not entitled to dismissal of the charges against him on the basis of qualified immunity. Similarly, Bushek is alleged to have failed to complete the MR–2 hearing within the 14–day time limit of § 251–5.1(b). Therefore, he is not entitled to qualified immunity with respect to the claim for his delay in completing the MR–2 hearing. Bushek is, however, alleged to have commenced the MR–2 hearing within the seven-day time limit of § 251–5.1(a). Likewise, the MR–3 hearing before Sanford is alleged to have been commenced and completed in accordance with § 251–5.1. Thus, Bushek is entitled to qualified immunity with regard to the claim for his delay in commencing the MR–2 hearing, and Sanford is entitled to qualified immunity with regard to the claims for his delay in commencing and completing the MR–3 hearing.

C. *Lack of Substantial Evidence at the Disciplinary Hearings*

Plaintiff alleges that by subjecting him to sanctions imposed in Tier III hearings

based on a lack of "substantial evidence," Bushek, Colwell, and Sanford deprived him of rights under the due process and equal protection clauses. Second Amended Complaint ¶ 43. Relying on *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), Defendants argue that there is no requirement that a decision in a disciplinary hearing be based on substantial evidence. In *Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2774 (1985), the Supreme Court addressed the question of what evidentiary standard should apply in disciplinary hearings which result in the loss of "good time credits" and held:

> the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. The standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessments of the credibility of witnesses, or weighing of the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board (citations omitted).

 Plaintiff argues that the standard for disciplinary hearings which result in segregation should be more stringent than that for hearings which result in the revocation of good time credits, because a prisoner generally has sufficient time to litigate the revocation of good time credits, whereas the penalty of segregation is applied immediately. While there may be some logical strength in that argument, it simply is not the law in this Circuit. In *Freeman*, the Second Circuit ruled that the evidentiary standard to be applied in a disciplinary hearing resulting in the penalty of segregation is the same as that enunciated in *Hill*. The *Freeman* court held, "Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is *some evidence* which supports the decision of the prison disciplinary board." 808 F.2d

at 954 (emphasis added). Accordingly, Plaintiff's claim that the disciplinary hearings were not supported by "substantial evidence" fails as a matter of law to state a claim upon which relief can be granted.

## IV. EIGHTH AMENDMENT VIOLATIONS

Plaintiff alleges that the conditions of his confinement in keeplock and IPC violated rights guaranteed by the consent decree in *Honeycutt*, the Fourteenth Amendment, and the Eighth Amendment. Second Amended Complaint, ¶¶ 45–48. Defendants argue that this claim must be dismissed for failure to allege the personal involvement of the Defendants.

 "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977)). A prisoner may only recover damages for unconstitutional conditions of confinement from the persons who created or maintained those conditions or from the persons who operated or were in charge of the facility. *See Lee v. Carlson*, 645 F.Supp. 1430, 1436–7 (S.D.N.Y.1986) (dismissing claim under § 1983 that the condition of plaintiff's cell violated the Eighth Amendment for failure to allege "any direct or personal conduct or responsibility on the part of any of the defendants"), *aff'd* 812 F.2d 712 (2d Cir. 1987). *See also Proudfoot v. Chenger*, No. 89–4290, 1990 WL 156605, at * 3, 1990 U.S. Dist. LEXIS 13604 at * 9–10 (E.D.Pa.1990) (where trial testimony indicated that defendant had no personal responsibility for the conditions in city lockup, plaintiff could not recover under § 1983 because "Responsibility for prison conditions lies with the governmental body and officials operating or in charge of the detention or correctional facility") Here, Plaintiff does not allege that Defendants bore any responsibility for creating, maintaining, or overseeing the allegedly unconstitutional conditions of his confinement in keeplock and IPC. Accord-

ingly, he fails to state a claim under § 1983 upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, the second, fifth, sixth, seventh, eighth, ninth, eleventh, and twelfth causes of action are dismissed with respect to all defendants. The tenth cause of action is dismissed with respect to all Defendants insofar as it alleges that Plaintiff was subjected to sanctions based on a "lack of substantial evidence." Therefore, Defendants Trepanier, Nielsen, Schnellbaecher, Bauvi, and Fenton are dismissed from this action.

The following claims remain to be tried: the first, third and fourth causes of action against Colwell; the tenth cause of action against Bushek for failing to commence the MR–2 hearing in a timely manner and for "knowing and intentional procedural errors" in the MR–2 hearing; and the tenth cause of action against Sanford for knowing and intentional procedural errors in the MR–3 hearing.

All counsel are ordered to appear on May 18, 1992 at 9:00 a.m. in courtroom 302 for a pre-trial conference.

IT IS SO ORDERED.