Anselmo SOTO, Plaintiff–Appellant,

v.

Hans WALKER, Supt., Auburn, C.F., T.H. Giltner, Lt., Auburn, C.F., Donald Selsky, Docs., Albany, Defendants–Appellees.

No. 635, Docket 93–2291.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1994.

Decided Jan. 11, 1995.

Julie Petrow, New York City (Daniel J. Kramer, Schulte Roth & Zabel, New York City, on the brief), for plaintiff-appellant.

Martin A. Hotvet, Albany, NY (G. Oliver Koppell, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Ass't Atty. Gen., Albany, NY, on the brief), for defendants-appellees.

Before: OAKES, JACOBS, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

The intricacies attending the law of prisoners' due process rights can confuse even the most experienced of lawyers. Little wonder then that Anselmo Soto, a prisoner acting *pro se*, struggled to assert the appropriate due process doctrine when he initiated this action against prison officials. Yet, Soto's instinct that he may not have received the process that was due him was sound. And the facts he alleged clearly describe an actionable due process violation.

Perhaps misled by Soto's inability to articulate pellucidly the strongest basis for his claim, the United States District Court for the Northern District of New York (Neal P. McCurn, Judge) adopted a Magistrate Judge's report which found no due process violation in Soto's allegations, and dismissed Soto's complaint for failure to state a claim. Now aided by counsel, Soto appeals that judgment to this Court. Since Soto's *pro se* submissions must be read liberally and he has alleged facts which indicate that his rights were violated, we reverse and remand.

## BACKGROUND

On July 30, 1989, a corrections officer saw Soto, an inmate at the Auburn Correctional Facility, swallow an unknown substance during a pat frisk. As a result, Soto was confined to the prison hospital, where he was placed under a drug watch and had his urine and feces collected.

Three misbehavior reports followed. The first, dated July 30, 1989, charged Soto with

being the subject of an investigation. This report was eventually dismissed because it failed to allege a violation of a prison rule. The second, dated July 31, 1989, was filed after Soto's urine tested positive for cannabinoids, and it charged Soto with violating the prison rule prohibiting narcotics use. The third, dated August 1, 1989, was filed after marijuana was found in Soto's feces. Like the second report, it charged Soto with violating the prison rule prohibiting narcotics use.

■ On July 31, 1989, as a result of the second misbehavior report, Soto was placed in "keeplock," a "form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir.1989) (citing N.Y.Comp.Codes R. & Regs. tit. 7, § 251–1.6).[1] Soto apparently received no informal hearing before this took place, nor anytime shortly thereafter. Seven days later, on August 6, 1989, a Tier III hearing—the formal procedure in the New York prison system for reviewing and adjudicating alleged violations of prison rules—was initiated. Its object was to address substantively the charge of the second report. At this hearing, Soto requested a consolidation of all three misbehavior reports. His request was denied, and the hearing was adjourned to procure witnesses. For reasons that are not fully clear from the record, the second report was dismissed on August 15, 1989.[2]

On August 14, 1989, prison officials began a Tier III hearing to address the substance of the charge in the third misbehavior report. Soto was found guilty and sentenced to a loss of privileges and to 90 days in keeplock. After an unsuccessful administrative appeal, Soto brought an Article 78 proceeding in state court. There he alleged that his August 14 hearing was held in violation of N.Y.Comp.Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 251–5.1(a)—which provides that a disciplinary hearing "must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said ... hearing, but, in no event may it be commenced beyond seven days of said confinement...." The state court agreed that § 251–5.1(a) had been violated, and it ordered the annulment of Soto's rule violation conviction and the removal of all references to it from Soto's records.

Soto then filed a *pro se* complaint in the District Court against the corrections officer who conducted the August 14 hearing, the Superintendent of the Auburn Correctional Facility, and the Director of Inmate Discipline for the Department of Corrections. In this complaint, Soto clearly alleged a violation of his due process rights, but whether he primarily charged that his due process rights were violated because 7 N.Y.C.R.R. § 251–5.1(a) had been transgressed, or because he had not been given an *informal* hearing before or shortly after being put in keeplock, is less certain.

Magistrate Judge Ralph W. Smith, Jr., interpreted Soto's complaint as based solely on the failure of prison officials to hold the Tier III hearing on the third report within the terms of 7 N.Y.C.R.R. § 251–5.1(a). Magistrate Judge Smith recognized that the defendants had violated § 251–5.1(a), but he concluded that such a violation of a state regulation standing alone did not establish a constitutional claim. Apparently realizing that due process requires that a formal disciplinary hearing be conducted "at a meaningful time and in a meaningful manner," *Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986), the Magistrate Judge determined that the delay prior to the second Tier III hearing was not so

---

1. New York regulatory and case law provides that an inmate can be transferred into keeplock when a prison official reasonably believes a prison rule has been violated. *See Bowe v. Smith*, 119 Misc.2d 453, 465 N.Y.S.2d 391, 393 (Sup.Ct. 1983) (interpreting N.Y.Comp.Codes R. & Regs. tit. 7, § 251–1.6(a)); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535–36 (2d Cir.1994).

2. Soto's submissions indicate that the charge of the second report was dismissed because prison officials failed to obtain an extension of time to conclude the August 6 hearing. Defendants do not explain why this procedural failure prompted the dismissal of the misconduct charge of the second report.

great as effectively to deny Soto an opportunity to be heard. He therefore recommended granting defendants' motion to dismiss. The District Court adopted the Magistrate Judge's report and recommendation, and dismissed Soto's complaint. Soto filed a timely appeal and successfully moved in this Court for the assignment of counsel.

## DISCUSSION

■ In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court made clear that when a state's regulations create a liberty interest for prisoners in remaining in the general prison population, a prisoner must be afforded procedural protections in connection with any transfer to restrictive segregation, whether the transfer is for "administrative" or "punitive"/"disciplinary" reasons. *See id.* at 469–76, 103 S.Ct. at 870–74. Specifically, a prisoner subject to "administrative" confinement, pending the resolution of misconduct charges, is entitled to at least "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476, 103 S.Ct. at 873. Officials must conduct "an informal, nonadversary evidentiary review" of the information in support of the prisoner's administrative confinement, and the "proceeding must occur within a reasonable time following an inmate's transfer."[3] *Id.* at 476 & n. 8, 103 S.Ct. at 874 & n. 8.

■ This Court has repeatedly held that, since 7 N.Y.C.R.R. § 251–1.6(a) specifies certain conditions that must be met to permit a prisoner's placement in keeplock, New York's regulations create a liberty interest for prisoners in remaining free from administrative confinement. *See Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Santana v.*

*Keane,* 949 F.2d 584, 585 (2d Cir.1991); *Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir. 1990); *Gittens v. LeFevre,* 891 F.2d 38, 40 (2d Cir.1989). It follows that, in connection with his transfer into keeplock on July 31, and pending a formal disciplinary hearing, Soto was at the very least entitled to the procedures described in *Hewitt*—i.e. "an informal, nonadversary review of the information supporting [his] administrative confinement, including whatever statement [he] wished to submit, within a reasonable time after confin[ement] ... to administrative segregation." *Id.* at 472, 103 S.Ct. at 871. *Accord Lowrance,* 20 F.3d at 535–36; *Gittens,* 891 F.2d at 41–42.

■ Though Soto seems to have received notice of the charges against him (which prompted his transfer into administrative segregation), Soto's submissions indicate that he was not afforded, "within a reasonable time," either (1) an opportunity to present his views concerning his transfer, or (2) a review of the basis for his transfer. Indeed, it appears that Soto did not receive any process whatsoever until the Tier III hearing, addressing the substance of the second misbehavior report, was commenced on August 6, 1989—a full seven days after his transfer into administrative confinement. At the August 6 hearing, moreover, Soto was denied any chance, formally or informally, to address the third misbehavior report (dated August 1, 1989). The only hearing, formal or informal, on this report did not take place until the second Tier III hearing was begun on August 14, 1989—fully fifteen days after Soto's "administrative" segregation.

The failure to provide informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim. *See Russell,* 910 F.2d at 78 (ten-day delay violative of due process); *Gittens,* 891

---

**3.** The requirement that a prisoner receive, in connection with an initial transfer to administrative segregation, at least some notice and opportunity to be heard is distinct from and in addition to the requirement that a prisoner receive, in connection with the adjudication of misconduct charges that might result in punitive/disciplinary confinement, the much more extensive procedural protections that are set forth in *Wolff v.*

*McDonnell,* 418 U.S. 539, 563–72, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974), and which approximate a formal adversarial hearing. *See Hewitt,* 459 U.S. at 466–77, 103 S.Ct. at 868–74; *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Bolden v. Alston,* 810 F.2d 353, 357 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

F.2d at 41 (seven-day delay violative of due process); *see also Santana,* 949 F.2d at 585 (five-day delay without explanation states a due process claim); *cf. Hewitt,* 459 U.S. at 475–76, 103 S.Ct. at 873–74 (need to conduct extensive investigation in wake of a riot justified four-day delay before review); *Lowrance,* 20 F.3d at 536 (opportunity to be heard on same day administrative confinement commenced satisfied due process). Thus, in light of *Hewitt,* its progeny in this Circuit, and the facts set forth by Soto in his *pro se* submissions, Soto has clearly stated a claim upon which relief can be granted.[4]

■ Defendants do not seriously dispute Soto's factual allegations. But, stressing certain language in Soto's submissions and the fact that his action names officials involved with the August 14 hearing, they maintain that Soto's complaint must be read as basing a claim solely on the prison officials' failure to conduct a formal Tier III hearing on the third misbehavior report within the time frame set by 7 N.Y.C.R.R. § 251–5.1(a). This, of course, was the ground on which the state court ultimately ordered the annulment of the charge in the third misbehavior report. But, as the Magistrate Judge properly noted, the violation of 7 N.Y.C.R.R. § 251–5.1(a) alone would not be enough generally to establish a constitutional claim. *See Davis v. Scherer,* 468 U.S. 183, 193, 104 S.Ct. 3012, 3018–19, 82 L.Ed.2d 139 (1984); *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

The issue, therefore, resolves itself to a simple one. Can we read Soto's submissions as making the claim that his due process rights were violated because no informal hearings were held when he was placed in confinement, or must we read them as focusing only on the violation of 7 N.Y.C.R.R. § 251–5.1(a)?

The answer to this question is clear. Because Soto was acting *pro se,* "we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). *Accord Elliott v. Bronson,* 872 F.2d 20, 21–22 (2d Cir.1989). Soto indicated that he was not granted any informal hearing and premised his action on the Due Process Clause. Furthermore, Soto cited the most significant cases—*Hewitt, Russell,* and *Gittens*—that provide legal support for the claim that he was deprived of due process by not being granted a timely informal hearing. Together all this is quite enough to present the issue to the District Court.[5]

### CONCLUSION

Since Soto alleged facts that support a valid due process claim premised on *Hewitt* and its progeny, we reverse the District Court's dismissal for failure to state a claim and remand for further proceedings.

---

4. The curious handling of Soto's misbehavior charges and the 15-day delay before a hearing on the third misbehavior report might also ground a viable claim. By lodging multiple misconduct charges against a prisoner based on a single incident, denying a request for a consolidated hearing, scheduling hearings sequentially with intervening delays, and confining a prisoner to administrative segregation until the completion of all hearings, prison officials create the basis for a charge that "administrative segregation [was] used as a pretext for indefinite confinement of an inmate." *Hewitt,* 459 U.S. at 477 n. 9, 103 S.Ct. at 874 n. 9 (suggesting that a "pretextual" administrative confinement might constitute an independent constitutional viola-

tion). The factual record before us is not sufficiently developed to allow us to resolve this issue, however, and we therefore do not address it further.

5. To the extent that Soto's claim does not name the most appropriate parties, he should be permitted upon remand to amend his complaint to name the proper parties. *See Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (indicating that a court must not dismiss a *pro se* action "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").