**Robert WEBSTER, D/B/A R & B Webster Live Poultry, Plaintiff,**

v.

**Gabriel F. MOQUIN and Bruce A. Sherman, Defendants.**

**No. 3:98 CV 01740(CFD).**

United States District Court, D. Connecticut.

Nov. 20, 2001.

John R. Williams, Williams & Pattis, New Haven, CT, for Robert Webster.

Richard F. Webb, Mark P. Kindall, Attorney General's Office Hartford, CT, for Gabriel F. Moquin, Bruce A. Sherman.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that the de-

fendants, Gabriel F. Moquin, Deputy Director of the Bureau of Regulation and Inspection for the Connecticut Department of Agriculture ("CDA"), and Bruce Sherman, Director of the Bureau of Regulation and Inspection for the CDA and acting State Veterinarian, deprived him of his property without due process of law in violation of the constitutions of the United States and Connecticut and without just compensation in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. The plaintiff seeks compensatory and punitive damages, as well as attorney's fees.

The defendants have moved for summary judgment on the following bases: (1) there are no genuine issues of material fact that they did not violate the plaintiff's constitutional rights and (2) they are entitled to qualified immunity as a matter of law. The motion for summary judgment [Document # 31] is GRANTED.

## I. Background [1]

The plaintiff, Robert Webster, operated R & B Webster Live Poultry in Lebanon, Connecticut. The plaintiff's business involved transporting poultry from farms in Connecticut, Vermont, Massachusetts, Rhode Island, and New York, to markets mainly in New York City.

On February 2, 1998, the plaintiff delivered poultry to two markets in New York City. On February 3, 1998, employees of the New York State Department of Agriculture and Markets, Division of Animal Industry, collected tracheal culture samples from the poultry. The samples were analyzed and a report was issued indicating that two birds tested positive for the avian influenza virus.[2]

On March 26, 1998, the New York Department of Agriculture and Markets sent a letter to the defendant Sherman and Dr. Lech Szkudlarek, a Veterinary Medical Officer of the United States Department of Agriculture ("USDA"), informing them of the New York test results. On April 3, 1998, Dr. Szkudlarek inspected the plaintiff's property and took "environmental" samples from crates used by the plaintiff for transporting poultry to market. Certain of those samples also tested positive for the presence of the virus. As a result, Sherman recommended to the defendant Moquin the imposition of a quarantine of all birds on the plaintiff's premises. On April 16, 1998, Moquin sent an order to the plaintiff stating that he must immediately clean and disinfect all trucks, poultry crates, and equipment, and that he must quarantine his birds. The letter also required that the plaintiff certify that all cleaning and disinfection was complete and that the department would require further testing before the quarantine could be lifted.

The plaintiff apparently complied with the order and then reported that his property had been cleaned and disinfected. On April 22, 1998, Moquin and Dr. Szkudlarek visited the plaintiff's property and obtained serum samples from the plaintiff's birds and environmental samples from the

1. The following facts are based on the parties' Local Rule 9(c) Statements and other summary judgment papers and are undisputed unless otherwise indicated.

2. "Avian influenza is an acute, highly contagious viral disease affecting poultry. Once established within the poultry population of an area, the disease can spread rapidly from flock to flock in the absence of effective control measures." Affidavit of Dr. Louis Van Der Heide, ¶ 3. An outbreak of avian influenza in Pennsylvania in the early 1980s caused quarantines of whole counties, and ultimately of the entire state, as well as the destruction of tens of thousands of birds. *See Empire Kosher Poultry, Inc. v. Hallowell,* 816 F.2d 907, 909–11 (3d Cir.1987).

plaintiff's equipment. The environmental samples were sent to the National Veterinary Services Laboratory and the serum samples were sent to the Connecticut Veterinary Diagnostic Laboratory. On April 24, 1998, the Connecticut laboratory reported that four of the serum samples tested positive for avian influenza, and five showed results that were "suspect." Sherman consulted with two professors from the Pathology Department of the University of Connecticut's College of Agricultural and Natural Sciences, and both advised him that all birds at the plaintiff's property should be destroyed to prevent the spread of avian influenza.

On April 27, 1998, Sherman wrote a letter to the plaintiff ordering him, under Conn. Gen.Stat. § 22–234,[3] to: (1) immediately depopulate all poultry on his premises; (2) dispose of all dead poultry at an approved incinerator; (3) clean and disinfect all poultry crates and equipment; and (4) refrain from entering any Connecticut poultry farm until further notice. The letter also notified the plaintiff that the quarantine would not be lifted until he received approval from the CDA, and until the results of the environmental samples were received.[4] Moquin and James Sullivan, also of the CDA, hand-delivered the letter to the plaintiff on April 27, 1998. Sometime after Moquin delivered the letter to the plaintiff, the plaintiff claims he told Moquin that the positive serum test results were likely due to the vaccination of the birds for the virus, rather than the actual presence of the influenza. Notwithstanding, Moquin, Sullivan, and the plaintiff destroyed thirty-two birds at the Webster premises.[5]

On May 13, 1998, Sherman sent a letter to the plaintiff lifting the quarantine. On June 29, 1998, Sherman countersigned plaintiff's application to be reinstated as an "Approved Poultry Wholesaler" for the State of New York. The plaintiff then filed a claim with the CDA for compensation for the destruction of the plaintiff's birds pursuant to Conn. Gen.Stat. § 22–326c. In a letter dated October 15, 1998, the Commissioner of Agriculture for the State of Connecticut informed the plaintiff that his claim was incomplete because it did not include documentation demonstrating the value of the birds and requested that the plaintiff forward such information to her attention. Neither the plaintiff nor his attorney responded, and no award has been made by the Commissioner of Agriculture.

The plaintiff then brought this action and sought permission from the State of Connecticut Claims Commissioner to sue the State. Based on a finding that the present action sought to recover relief arising from the same set of facts as the plaintiff's petition to the Claims Commissioner alleging negligence of the State employees, the Claims Commissioner dis-

---

**3.** Conn. Gen.Stat. § 22–324 provides:
[I]f the commissioner has reasonable cause to believe that any flock of poultry within the state is threatened by any infectious, contagious or transmissible avian disease, he may issue such order as he deems necessary to prevent the introduction or spread of such disease in the state. Such order may include, but not be limited to, an embargo on the importation of poultry or poultry products into the state from states or areas where any infectious, contagious or transmissible avian disease is present or the commissioner has reasonable cause to believe is present.
Conn. Gen.Stat. § 22–324(c).

**4.** On May 8, 1998, the National Veterinary Services Laboratory reported that none of the environmental samples taken on April 22, 1998 tested positive for avian influenza.

**5.** The plaintiff refers to the thirty-two birds as his "pets." Deposition of Robert Webster, 67–68.

missed the plaintiff's petition in an order dated December 16, 1998.

## II. Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (internal quotation marks omitted), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Alteri v. General Motors Corp.,* 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Securities & Exch. Comm'n v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum,* Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

In ruling on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## III. Discussion

The plaintiff argues that the defendants' actions deprived him of his substantive and procedural due process rights in violation of the Fourteenth Amendment to the U.S. Constitution.[6] He also contends that the defendants destroyed his property without providing him just compensation in violation of the Fifth and Fourteenth Amendments. The defendants move for summary judgment on the grounds that there are no genuine issues of material fact that they did not violate his constitutional rights and that they are entitled to qualified immunity as a matter of law.

---

**6.** As noted earlier, the plaintiff's complaint also alleges that the defendants' deprived him of due process under the Connecticut Constitution.

■ The Supreme Court of the United States has instructed that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis,* 523 U.S. 833, 842, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Accordingly, the Court must first determine whether the facts presented by the plaintiff in his response to the motion for summary judgment show that the defendants' actions deprived the plaintiff of any constitutional rights before considering the qualified immunity defense. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

**A. Procedural Due Process Claim**

■ To succeed on a procedural due process claim, a plaintiff must establish (1) that he had a protected interest; (2) that the state deprived him of this interest; and (3) that the deprivation was effected without due process of law. *Local 342, Long Island Public Service Employees v. Town Bd. of Town of Huntington,* 31 F.3d 1191, 1194 (2d Cir.1994).

The plaintiff does not specify the interests which he believes to be protected. However, it is assumed that his claim is based on his asserted property interest in his business's lost profits and goodwill resulting from the quarantine and his property interest in his pet birds that were destroyed. Assuming that those interests are recognized and protected by the Fourteenth Amendment, and that the defendants deprived the plaintiff of them when they ordered the quarantine and destruction of the birds, the Court must examine whether such deprivation occurred without due process.

The Supreme Court has recognized that "the necessity of quick action by the State

or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *see also Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). The Second Circuit has interpreted *Parratt* to provide that "the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion" where there exists an adequate postdeprivation remedy and "competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical." *Catanzaro v. Weiden,* 188 F.3d 56, 63 (2d Cir.1999).

■ Applying these principles here, the Court finds that the plaintiff has not adduced sufficient evidence from which a reasonable trier of fact could infer that the defendants abused the discretion afforded to them by Conn. Gen.Stat. § 22–324, providing for the "quarantine or destruction" of "any poultry afflicted with or exposed to any infectious, contagious, or transmissible avian disease of which he has knowledge." Conn. Gen.Stat. § 22–324(b).

First, as to the defendants' reasonable belief of an emergency, a finding which is necessary to invoke the *Parratt* holding, the Court finds that there was competent evidence before the defendants causing

them to reasonably believe that an emergency existed. It is undisputed that defendants were presented with evidence that the birds were infected with or exposed to an infectious, contagious, transmissible avian disease that could have significant consequences. The New York Department of Agriculture and Markets notified the defendants that the plaintiff had brought poultry infected with avian influenza to New York City markets. A Doctor of Veterinary Medicine employed by the USDA confirmed the presence of the virus on plaintiff's equipment. Scientific analysis by the Connecticut Veterinary Diagnostic Laboratory confirmed that four of the birds tested positive for the virus and five were "suspect." Such evidence provides ample support for a conclusion that the defendants' had a reasonable belief that the birds presented an immediate public health threat.

Second, the defendants did not act arbitrarily or abuse their discretion. In support of his contention that the defendants acted in an arbitrary and irrational manner, the plaintiff claims that the birds' positive tests resulted from an influenza vaccination administered to his birds by the University of New Hampshire.[7] The plaintiff claims further that he informed the defendants of the vaccination, but that they destroyed his property out of "bureaucratic stubbornness."[8] Even assuming that the birds were vaccinated and the serum tests failed to distinguish between the presence of the disease and the vaccination, the defendants' actions do not rise to the level of abuse of discretion or arbitrariness. The defendants' actions "do not implicate the specter of random demolition." *Catanzaro*, 188 F.3d at 63. The defendants did not quarantine the birds until after they had been informed by officials from the State of New York and USDA that the plaintiff's birds and equipment tested positive for avian influenza. Further, before they took any action destroying the birds, they employed another set of tests on the birds, confirming the presence of avian influenza, and conferred with two agricultural and natural science professors from the University of Connecticut, both advising that the birds should be destroyed. None of the evidence presented to the defendants indicated that the positive test results were due to anything other than infection with the disease. Thus, the Court finds that their actions were not arbitrary nor an abuse of discretion.

Furthermore, the State provides postdeprivation remedies. Conn. Gen.Stat. § 22–326c provides:

The owner of any property destroyed pursuant to section 22–324 may submit a claim to the commissioner of agriculture for compensation for such property. The commissioner may approve payment of the claim after the value of the property destroyed has been determined by the commissioner and the owner

---

7. The defendants dispute the plaintiff's allegation that the birds were vaccinated for avian influenza. *See Def.'s Reply Mem.* at 3–4, 6. However, as noted in the text, this is not a dispute of material fact. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 23 (2d Cir.1994) (providing that only disputes over material facts, or those that "might affect the outcome of the suit under the governing law," will preclude the entry of summary judgment).

8. The plaintiff also claims that the defendants' actions were arbitrary and irrational because the form of influenza was harmless, nonpathogenic, and presented no threat. According to the undisputed evidence of the defendants, however, though the strain of influenza that the birds tested positive for was non-pathogenic, there existed the possibility that the virus could change at any time to become highly pathogenic. Van Der Heide Aff. ¶ 5. The plaintiff does not dispute this latter fact.

thereof .... The commissioner of agriculture shall adopt regulations in accordance with chapter 54 establishing procedures for determining the value of property destroyed pursuant to section 22–234. Such procedures shall include provisions for arbitration and appraisal by two appraisers, one chosen by the commissioner and one chosen by the owner.

Conn. Gen.Stat. § 22–326c. While the plaintiff claims that the State did not afford him any postdeprivation remedy other than the present suit, he fails to acknowledge that it was his failure to respond to the Commissioner of Agriculture's request for information demonstrating the value of the birds, rather than the State's lack of a compensation mechanism, that led to the State's failure to compensate him; the plaintiff has presented no evidence to dispute this.[9]

Accordingly, the Court finds that the defendants' actions did not deprive the plaintiff of procedural due process as a matter of law.

## B. Substantive Due Process Claim

 The plaintiff also claims that the defendants deprived him of his previously described property interests in a manner violating his right to substantive due process. To succeed on his substantive due process claim, the plaintiff must show that the government action was "arbitrary, conscience-shocking, or oppressive in a constitutional sense," and not merely " 'incorrect or ill-advised.' " *Catanzaro*, 188 F.3d at 64

(quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995)); *see also Lewis*, 523 U.S. at 846, 118 S.Ct. 1708 ("Only the most egregious official conduct can be said to be arbitrary in the constitutional sense.") (internal quotations omitted); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir.1999) ("Substantive due process is an outer limit on the legitimacy of governmental action .... Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."). As noted above, the plaintiff presented no evidence which suggests that the defendants' actions were arbitrary, conscience-shocking, or outrageous. At most, assuming the positive test results were due to the birds' vaccination rather than disease, their actions were "incorrect or ill-advised." This is insufficient for a trier of fact to find a substantive due process violation.

## C. Fifth Amendment Just Compensation Claim

 Assuming again that the plaintiff was deprived of property, the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[10] The Supreme Court has held, however, that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State ...." *Williamson County Re-*

---

9. Although the plaintiff does not dispute his failure to respond to the Commissioner of Agriculture's request, *see* Pl.'s Local R. 9(c) Stat. ¶ 48, he argues that his claim with the Connecticut Claims Commissioner and its subsequent dismissal evidence his pursuit of all available state remedies. That process, however, did not exhaust the separate administrative remedy provided by Conn. Gen.Stat.

§ 22–326c, involving the Commissioner of Agriculture.

10. The Fifth Amendment's takings clause applies against the States through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

*gional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Conn. Gen.Stat. § 22–326c provides a procedure for making compensation claims for property destroyed to prevent the spread of avian influenza. The plaintiff "cannot claim a violation of the Just Compensation Clause until [he] has used the procedure and been denied just compensation." *Williamson,* 473 U.S. at 195, 105 S.Ct. 3108. As noted earlier, while the plaintiff filed an application for compensation pursuant to Conn. Gen.Stat. § 22–326c, he never responded to the Commissioner's request for documentation on the value of the birds. Thus, he has not "used" the procedure provided by the State. Accordingly, his takings claim is not ripe for adjudication.

### D. Qualified Immunity

■■■ Even assuming—and it must be stated that it is a difficult assumption to make—that the defendants' actions did deprive the plaintiff of his substantive and procedural due process rights, and right to just compensation, the defendants' actions are protected by the qualified immunity defense as a matter of law. The law of qualified immunity is well settled in the Second Circuit:

> Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense

protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met-and the defendant is entitled to qualified immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions.

*Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotation marks omitted). Once a defendant raises a qualified immunity defense, the burden is on the plaintiff to establish that immunity does not apply. *See Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986).

■■■ In the context of a motion for summary judgment, a defendant is entitled to qualified immunity "when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon,* 66 F.3d at 420 (internal quotation marks omitted); *see also Behrens v. Pelletier,* 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (indicating that qualified immunity is an entitlement not to stand trial or face the burdens of litigation).

#### 1. Violation of a Clearly Established Right

■■■ In determining whether a particular right was clearly established at the time a defendant acted, a court must consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable

circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

▮▮▮▮ The plaintiff appears to claim a right not to have his property quarantined or destroyed without confirmation that the positive serum tests were due to disease rather than inoculation, even if postdeprivation remedies were available. Because qualified immunity is an affirmative defense, the defendants bear the "burden of demonstrating the nonexistence of a clearly established right." *Tellier v. Fields,* No. 98–2249, 2001 WL 457767, at *11 (2d Cir. April 26, 2001). As is evident by the Court's earlier conclusions regarding the plaintiff's rights, the Court finds that the defendants have met their burden in demonstrating the nonexistence of any decisions by the U.S. Supreme Court or the U.S. Court of Appeals for the Second Circuit recognizing the plaintiff's right in this context or "defin[ing] the contours of the right with reasonable specificity." *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990). Thus, this Court concludes that this right is not sufficiently clear to overcome the defendants' qualified immunity defense, and the defendants are entitled to the defense of qualified immunity as a matter of law.

#### 2. Objectively Reasonable Action

▮▮▮ Even assuming the defendants violated a clearly established federal right of the plaintiff, the plaintiff has failed to establish that a reasonable defendant official would have understood that the defendants' acts were unlawful. The Court finds that it was objectively reasonable for the defendants to believe their actions were lawful at the time of the challenged acts of imposing the quarantine and destroying the birds. As noted earlier, even assuming that the birds' positive tests may have actually resulted from vaccination rather than disease, the defendants had sufficient competent evidence allowing them to reasonably believe that an emergency did in fact exist. The defendants did not merely rely upon one positive serum test indicating the presence of the virus on the plaintiff's property, but rather were presented with considerable evidence suggesting the plaintiff's birds were infected with the virus. Again, the New York Department of Agriculture and Markets notified the defendants that the plaintiff had brought poultry infected with avian influenza to New York City markets, a USDA employee confirmed the presence of the virus on plaintiff's equipment, and scientific analysis by the Connecticut Veterinary Diagnostic Laboratory confirmed that four of the birds tested positive for the virus and five were "suspect." Thus, assuming the plaintiff did have a clearly established federal right, it was reasonable for Moquin and Sherman to believe that such right was not violated by the quarantine order and subsequent destruction of the birds. Accordingly, the plaintiff's claims are barred by qualified immunity as a matter of law.

### IV. Remaining State Law Claims

The Court further declines to exercise supplemental jurisdiction over the plaintiff's Connecticut Constitution due process claim on the ground that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis

of a federal question claim already disposed of ....."), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

## V. Conclusion

For the preceding reasons, the defendants' motion for summary judgment [Document # 31] is GRANTED, and the case is DISMISSED.